# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Saied Salimitari, | No. CV-25-03991-PHX-DJH (MTM) |
| Petitioner, | **ORDER** |
| v. | |
| David R. Rivas, et al., | |
| Respondents. | |

On October 24, 2025, Petitioner filed a habeas corpus petition under 28 U.S.C. § 2241 seeking release from immigration detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and a Motion for Preliminary Injunction requesting the same. (Docs. 1, 3). After directing expedited briefing, the Court denied the Motion for Preliminary Injunction but took the Petition under advisement, warning that under the record presented so far

> Petitioner has failed to demonstrate that he is likely to succeed on the merits of his claims so as to entitle him to preliminary injunctive relief. As time passes, however, this conclusion may change; the longer any unexplained delay in the issuance of travel documents goes on, the more it weighs in favor of finding "good reason" to believe Petitioner's removal is not significantly likely to occur in the reasonably foreseeable future.

(Doc. 27 at 7). The Court therefore ordered Respondents to file periodic status updates "explaining, with evidence, when it expects to effect Petitioner's removal." (*Id.*). Respondents have now filed three updates. (Docs. 29, 37, 39). Petitioner has also renewed his request for preliminary injunctive relief. (Docs. 30, 36, 38). For the reasons that follow, the Court now grants the Petition and orders that Petitioner be immediately released from

custody.

## I.    Background

The parties are familiar with the factual background of this case, and it was discussed in detail in the Court's December 17, 2025 Order and will not be repeated here at length.  (*See* Doc. 27 at 2-3).  Petitioner is a native and citizen of Iran who entered the United States in 1979 as a teenager.  (*Id.*).  After several misdemeanor convictions, Petitioner was placed in removal proceedings and eventually ordered removed to Iran.  (*Id.*).  On July 17, 2025, Petitioner was taken into ICE custody, where he remains today.  (*Id.*).

## II.    Legal Standard

As discussed in the Court's December 17, 2025 Order, Petitioner's continued detention is governed by 8 U.S.C. § 1231 and *Zadvydas v. Davis*, 533 U.S. 678 (2001).  Under § 1231(a)(1), the Government has 90 days in which to remove an alien once a removal order becomes final.  Detention during this removal period is mandatory.  8 U.S.C. § 1231(a)(2).  If the Government is unable to effect removal within the 90-day removal period, continued detention of aliens, like Petitioner, becomes discretionary.  8 U.S.C. § 1231(a)(6).  That discretion, however, is not unfettered, and indefinite detention is not permitted.  *Zadvydas*, 533 U.S. at 689 (8 U.S.C. § 1231(a)(6) "does not permit indefinite detention.").  This is not to say that every alien like Petitioner must be released once the 90-day removal period has expired.  533 U.S. at 701.  Rather, the Supreme Court in *Zadvydas* recognized an implicit post-§ 1231(a)(2) period in which continued detention is "presumptively reasonable" and does not violate the Fifth Amendment.  *Id.*  The *Zadvydas* Court concluded that this "presumptively reasonable" period extends for no more than 6-months once a removal order becomes final (including the 90-day mandatory detention period under § 1231(a)(2)).  *Id.*  Thereafter, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Id.*  If, after considering the evidence, the Court finds that "removal is not reasonably foreseeable, the

court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699.

### III.    Discussion

As discussed in the Court's December 17, 2025 Order, for *Zadvydas* purposes Petitioner's most recent removal order is dated April 16, 2019. (Doc. 23-1 at 5).[1]  Since then, Petitioner was not detained until July 17, 2025. (*Id.*).  So, and at latest, the *Zadvydas* period did not begin running until July 17, 2025.  Accordingly, while the six-month "presumptively reasonable" *Zadvydas* period had not yet expired as of the Court's December 27, 2025 Order, it now has.  Therefore, to be entitled to relief, Petitioner must demonstrate "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and, if he does so, the burden shifts to Respondents to rebut that showing with sufficient evidence.  *Zadvydas*, 533 U.S. at 701.

Here, Petitioner was originally ordered removed to Iran in 2004.  (*See* n.1, *supra*). More than two decades have passed since that removal order became final, and Respondents have been unable to remove Petitioner.  Indeed, on review of the record, no evidence has been presented that Respondents have even *attempted* to remove Petitioner. The only evidence Respondents have presented is declaratory.  (*See* Docs. 23-1; 29-1; 37-1; 39-1).  None of those declarations, however, detail any request for travel documents between the United States and the Republic of Iran.[2]  This pattern has continued during Petitioner's present detention.  That is, despite detaining Petitioner more than seven months ago, local ICE officials have yet to even send a travel document request to ICE headquarters, let alone to the government of Iran.  Prior to the expiry of the "presumptively reasonable" *Zadvydas* period in December 2025, the Court was willing to conclude that

---

[1] Petitioner originally had two different A-files, which apparently resulted in bifurcated immigration proceedings and multiple removal orders.  (*See* Doc. 27 at 2, 4).

[2] As Respondents acknowledge, "[i]n the absence of formal diplomatic relations between the United States and Iran since 1980, the Iran Interests Section of the Pakistan Embassy manages the diplomatic and consular affairs of Iran in the United States."  (Doc. 29 at 1 n.1).

bureaucratic inertia may explain this delay, but no longer.  (*See* Doc. 27 at 6-7) ("the longer any unexplained delay in the issuance of travel documents goes on, the more it weighs in favor of finding 'good reason' to believe Petitioner's removal is not significantly likely to occur in the reasonably foreseeable future.").  Since the Court's December 17, 2025 Order, Respondents have yet to even submit a travel document request, despite ample time to do so.  Accordingly, on the record presented, the Court concludes that Petitioner has shown good reason to believe that his removal to Iran is not significantly likely to occur in the reasonably foreseeable future.  The burden thus shifts to Respondents to rebut that showing with sufficient evidence.

Since the Court's December 17, 2025 Order, Respondents have continued to present purely declaratory evidence.  (*See* Docs. 29-1; 37-1; 39-1).  On January 6, 2026, they presented a Declaration from Deportation Officer (DO) Jorge E. Hernandez.  (Doc. 29-1).  DO Hernandez attests that he met with Petitioner on January 3, 2026, to "request[] his assistance is filling out Form I-217, Information for Travel Document or Passport," but that Petitioner refused to sign the document or provide any information.  (Doc. 29-1).[3]  DO Hernandez attests that "ERO will comb through [Petitioner's] A-file and is requesting the A-files of [Petitioner's] family members to (*hopefully*) acquire the necessary information for the travel document request."  (*Id.*)(emphasis added).  DO Hernandez does not attest, however, that he (or anyone else) ever actually did so.

On January 26, 2026, Respondents provided the Declaration of DO Jason Cole.  (Doc. 37-1).  DO Cole attests that Petitioner was transferred from the San Luis Regional Detention Center in Arizona to the Otay Mesa Detention Center in California on January 8, 2026.  (*Id.* at 1).  On January 15, 2026, DO Cole attests that "Petitioner['s] case was placed on [DO Cole's] docket," and that—five days later—he "reviewed the case file in preparation for a Travel Document Request."  (*Id.*).  On January 20, 2026, DO Cole

---

[3] Petitioner disputes this, asserting that he "asked that a copy of the form be provided to his attorneys so they could review it" out of concern that signing the form might result in his deportation to a third country.  (Doc. 35-1 at 5).  Apparently, ICE was unwilling to provide Petitioner with a copy of Form I-217.  (*See* Doc. 29-1 at 3) (indicating that Petitioner was provided a copy of Form I-229(a), but not Form I-217).

"requested a money order" to cover an "application fee," but had not yet received it at the time of his January 24, 2026 Declaration.  (*Id.* at 2).  DO Cole does not attest that he, or anyone else, "acquire[d] the necessary information for the travel document request" that DO Hernandez attested was required before such a request could be submitted.

On February 17, 2026, Respondents provided the Declaration of DO Jesus Blanco. (Doc. 39-1).  DO Blanco attests that, as of February 16, 2026, ICE has "received the money order needed to submit a Travel Document Request," and that the request was "being processed for submission" to ICE headquarters for further delivery to Iran.  (*Id.* at 1-2). Notably, DO Blanco does not attest that *he* is "processing" Petitioner's travel document request, and as with DO Cole, DO Blanco also does not attest that he, or anyone else, "acquire[d] the necessary information for the travel document request" that DO Hernandez attested was required before such a request could be submitted.  Nor does DO Blanco explain what it means that the travel document request is "being processed" or when it might be submitted to ICE Headquarters, let alone to Iran.[4]

On this record, the Court concludes that Respondents have failed to rebut Petitioner's showing.  Respondents have had more than 20 years to effect Petitioner's removal but have been unable to do so.  This dynamic has not changed since Petitioner's present detention began more than seven months ago.  In that time, Respondents have failed to even complete a travel document request, provide any evidence to support when that request might be completed, or provided any evidence to support that Iran is significantly likely to honor that request.[5]  Indeed, it is not even clear whether Respondents have made

[4] It is also not clear why DO Blanco provided a Declaration at all, considering that DO Cole attested that Petitioner's case had been "placed on [DO Cole's] docket" on January 15, 2026.  (*See* Doc. 37-1 at 1).  DO Blanco does not attest that Petitioner's case was subsequently placed on *his* docket, and appears only to have "review[ed ] government databases and documentation relating to Petitioner."  (Doc. 39-1 at 1).  As such, the Court questions to what extent DO Blanco has personal knowledge as to any of the facts underlying his Declaration.

[5] While DO Hernandez attested in his January 6, 2026 Declaration that "DHS has been successful in effectuating final orders of removal to Iran" as recently as December 2025, this says nothing about DHS's ability to effectuate *Petitioner's* removal (as opposed to "Iranian nationals" generically).  And, notably, neither DO Cole nor DO Blanco make any such avowal in their subsequent Declarations, suggesting that DHS is no longer able to effectuate such removals.  (*See* Doc. 35-3) (collecting media reports reflecting recent

any effort to gather the information purportedly necessary to complete a travel document request.

The Supreme Court held in *Zadvydas* that as the period of detention grows, "what counts as the 'reasonably foreseeable future' would have to shrink." 533 U.S. at 701. As noted, Petitioner has now been detained beyond the presumptively reasonable period identified in *Zadvydas*, and having provided "good reason" to support that his removal to Iran is not significantly likely to occur in the reasonably foreseeable future, the burden shifts to Respondents to rebut that showing with sufficient evidence. *Id*. Respondents have failed to do so. No evidence has been provided to support that Respondents have even completed a travel document request, submitted it to Iran, or that Iran is significantly likely to accept that request. Indeed, the evidence provided so far, compels the opposite conclusion. Accordingly, the Court finds that Petitioner's continued detention is in violation of the Fifth Amendment and will thus grant the Petition.

**IT IS ORDERED:**

(1)    The Petition for Writ of Habeas Corpus (Doc. 1) is **granted**.

(2)    Respondents must **IMMEDIATELY RELEASE** Petitioner from custody.

(3)    No more than **48 HOURS** from the time of this Order, Respondents must file a notice of compliance.

(4)    Petitioner's pending motions (Docs. 30, 36, 38) are **denied as moot**.

(5)    Respondents' obligation to provide periodic status reports (*see* Doc. 27 at 8) is **discharged**, with the exception of the notice of compliance required above.

(6)    The Clerk of Court must enter judgment accordingly and close this case.

Dated this 19th day of February, 2026.

Honorable Diane J. Humetewa
United States District Judge

---

deteriorating conditions within Iran, as well as deteriorating diplomatic relations between the United States and Iran).

- 6 -